David Haberbusch appearing for appellant and Louis Espen appearing for appellee. Good morning, your honors. This is David Haberbusch. Yes, Mr. Haberbusch. Do you wish to reserve any time? Your honor, I'd like to reserve five minutes. All right. You may commence. Thank you. May it please the court. The plan confirmed in this case was based upon conjecture and speculation, not as a result of evidence presented and findings based thereon. Appellant's excerpts of Record Document 5, pages 26 to 30, shows that the scheduling order relied upon by appellees required them to file the evidence in support of their plan of confirmation by October 8 of 2021. Evidence sufficient to support the plan confirmation was appellee's burden, and as appellant's opening brief, appellee's opening brief, and appellant's reply brief show, little or no evidence was offered by appellees in support of the confirmation of their plan. The confirmed plan does not provide for payment of appellant's claim in the sum of more than $185,000 as set forth in its proof of claim. Mr. Haberbusch, there's an argument they make that there was some sort of estimation process. Is there anywhere in the record that demonstrates that your client received notice of estimation? No, your honor, there was no notice of estimation. There were provisions in the plan that set forth conclusions that were not based upon facts or evidence setting forth the manner in which the estimation was to be calculated, and it is those provisions that were struck from the plan when it was confirmed. And you did not in any sense acquiesce in anything that would be deemed to be an estimation process, correct? There's nothing in the record that shows that. Okay. You may continue. Thank you. The confirmed plan does not provide for payment of appellant's claim in the sum of more than $185,000 as required by section 1325, subsection A, 5B, Roman numeral 2. The confirmed plan provides for payment of appellant's secured claim in the sum of $132,089.07. The amount of the secured claim provided for in the plan is based upon debtor's best predicted outcome of an adversary proceeding filed against appellant. Appellees contend that the bankruptcy court had authority to estimate the claim because it was unliquidated. This misconstrues the facts. There is no dispute about the amount of appellant's claim. What remains unliquidated is the counterclaims of the appellees advanced in the adversary proceeding filed by them. What remains unliquidated is their claims, not the claim of appellant. Therefore, the bankruptcy court was without a basis for estimating appellant's claim. So your argument is there wasn't notice given, there was no procedure, and had there been, they couldn't have done it. That is correct. Okay. Appellees now contend that appellant's claim was estimated by the bankruptcy court even though there was no evidence offered to serve as a basis for determining the amount at which the claim should be allowed. Appellees instead relied upon the plan provisions I previously referenced, which are quoted verbatim on page 30 of appellee's opening brief. Additionally, appellees rely on an answer filed by appellant to the adversary proceeding brought by appellees to support their conclusion that the bankruptcy court properly estimated appellant's claim. What appellees don't tell the court is that the answer to the complaint was filed 19 days after the plan confirmation hearing was conducted. The plan confirmation hearing was on October 21, and the record shows that the answer to the adversary proceeding was filed on November 8, 2021 to suggest that the bankruptcy court relied upon a nonexistent answer when estimating appellant's claim is simply wrong. Well, it's not even evidence, right? That is correct. Yeah. Even assuming that appellees are correct that the claim was estimated, section 502 of the bankruptcy code explicitly provides that the estimation of claims are for purposes of allowing a claim. Therefore, appellee's arguments that the treatment required by section 1325, subsection A5B, Roman 2, and subsection Roman 3I are not applicable because appellant's claim is not allowed. Those are simply wrong legal arguments. If the claim was estimated, then it was estimated for purposes of allowance, and the treatment provided by the plan is inadequate. The record shows that the treatment of the alleged estimated claim was to afford appellant adequate protection and interest on the estimated claim. However, there is nothing in the record showing any evidentiary offering made by appellees that monthly payments under the plan and the interest rate on the secured claim adequately compensate appellant for the risks imposed by the plan. There was substantial equity in the property, correct? There was some equity in the property, Your Honor. There was no evidence submitted to establish what the value of the property was and what the liens against the property were, other than what is stated in the plan with respect to the treatment of the claims. What about the schedules? Your Honor, I don't know that those were offered as evidence at the confirmation hearing. I believe that they were not. Okay. Could the court rely on the schedules? Your Honor, of course the court could. However, the weight to be given to those is, of course, up to the trial court. But, again, there are unsupported conclusions of the debtors. It's a weight issue, though. It is a weight issue, Your Honor. There is no question about that. Also, there was no evidence offered to support a finding that interest at 7.89% per annum is the appropriate interest rate to be applied on the allowed secured claim. Rather, what appellees did was they referred to a CFR to support the idea that that was the interest rate that should be applicable, and we all know that CFRs are not evidence. The plan provisions with respect to the payments to be made by an unappellant secured claim are ambiguous and bordering on the unintelligible. The plan provides interest shall accrue at $868.48 per month for the entire life of the plan, notwithstanding that the plan provides for a payment in month 24 of $119,395. The inference to be drawn is that the month 24 payment will not reduce principal or be paid on appellant's claim because, if it were, the interest for the life of the plan would be reducing over the period of months 25 through 60, but it does not. Consequently, the plan provides for payments of $43.98 for the months 1 through 4 and $1,112 for months 5 through 23 and 25 through 60. The payments made during those months include both principal and interest, totaling $61,160. The payments made during months 1 through 4 total $175.92, such that the total of all monthly payments excepting month 24 is $61,335.92. The interest that accrues during the term of the plan at $868.48 per month is $52,108.50. Therefore, the principal paid out during the term of the plan, resulting from the payments made during all months of the plan except for month 24, result in a reduction of the principal balance of appellant's claim in the amount of $9,227.12 with the application of $119,395, that is the month 24 payment, to reduce the principal balance of appellant's claim. Excuse me. Go ahead. Yes, thank you. With the application of month 24's payment, at the end of the plan, there is a remaining balance that's unowed of $3,861.95, and that obviously was not intended. What we suggest, Your Honor, is that the terms of the plan with respect to these monthly payments and the month 24 payment are unintelligible, and we don't know exactly how that works with respect to the treatment of the claim. I will admit to having tried to do the math myself, and I'm smiling a little bit because I rounded and I got to roughly the same place. So I agree with you. There's a mathematical issue here. Let me ask you a more specific one. We're almost at your five minutes. What should they have done? What should the plan be in a circumstance where you're objecting to a claim like this? Your Honor, the bankruptcy code is clear. Section 1325, the subsections I've already cited to and cited in our brief, it has to be equal monthly payments throughout the duration of the plan. That's how it should have been resolved, including an interest rate supported by evidence. So, counsel, are you suggesting that if there was an objection that was outstanding that it had to be resolved before the plan could be confirmed? Yes. Could they not get an injunction in the litigation? They have an adversary proceeding. I suppose they could seek an injunction stopping you from foreclosing, right? Well, Your Honor, I don't think we need one. We have the automatic stay. Well, if they're not going to use the plan apparatus, they're not going to pay you anything. They always have an injunction right, right? Your Honor, absent the bankruptcy, I agree. Yes, there is always a right to seek an injunction. Okay. All right. Well, you're at your five minutes. Do you wish to reserve the rest of your time? No, Your Honor. I will finish my argument. Okay. There was no evidence offered supporting a finding that the payment of the 24th month payment, the $119,000 payment, is feasible. There was no evidence offered that the real property serving as security for appellant secured claim can actually be sold or refinanced in order to fund the required payment. Even if such evidence had been offered, the authorities we have cited in our brief irrefutably show that the evidence would be inadequate under the facts of this case. While appellees rely on Schedules I and J to support feasibility, Schedules I and J represent unsupported, unexplained conclusions resulting in a net disposable income of $1,795.41. These are amended schedules. The original Schedules I and J showed net disposable income of $44.43, and they were signed under penalty of perjury. Can I ask, did you have a chance to sort of question the debtors about that? I mean, I certainly take your point that when things suddenly change, you're entitled to know why. Did you pursue that? Your Honor, we didn't have an opportunity to. These were filed on October 8th. The hearing was on October 21. The debtors were not present, as the record reflects. There was no chance to answer that. You had 13 days to say, gee, can we change the hearing date or do a 2004 exam or do something. Within that time, what did you do? Your Honor, we filed our opposition to the confirmation of the plan and had little time to do much else. Well, that may not be your call, whether you had little time. But you did nothing else, right? Yes, Your Honor, that is correct. And I would note that the local rules for the Central District of California provide that a rule 2004 examination requires at least 21 days' notice. And that's never varied, counsel? Nobody ever goes to a judge and says, gee, I need to change that rule a little bit here. I have an emergency? I suppose it could be done. I've never seen it. I suppose it could, too. Okay. So, Your Honor, there's more than a 4,000 percent increase in the net disposable income, which remains unexplained. Have they made all the payments? So far as we know, yes, Your Honor, all the payments have been made. I have nothing further at this time. Thank you. So you can reserve. You've got about two minutes. We'll reserve the rest of your time. Thank you. Thank you. All right, Mr. Espin. Good morning, Your Honors. It's good to see you all again. Lewis J. Espin, Law Offices of Lewis J. Espin. On behalf of debtors and appellees, I appreciate the opportunity to appear before you in this 21st century manner. I'm going to focus more on some of the case law that I believe needs to be addressed. You've all read the briefs. You're all well aware of the briefs. But with respect to the appellee's brief and appellant's reply, I found that there were three cases that I thought are important that need to be addressed that were not addressed in the appellee's either opening brief or in their reply. And I'll take them in the order of the argument that we have. As Your Honors can see here today, the appellant has not addressed the issue of ripeness. And the important case there is the case of In re House, H-O-W-E-S-89-B-R-77-FAP-9-19-B-B. Counsel, can I stop you and say you take at the same time the position that it's not right, but that you also take the position that it's moot. So you're taking the position there's never an appeal possible on this? No, Your Honor. I took that as an alternative argument. Well, isn't that kind of – I mean, I understand alternative arguments, but that seems to me sort of unfair. Well, Your Honor, I understand that, but I do understand also that the case law and procedure allow for alternative arguments. Sure. That doesn't make them convincing. No. Wait, stop. If the reality is it's A or B and you're saying it's both, that can't be right. Right. That's what we're saying, okay? I'm going to address the issue of ripeness, if I may. On the issue of ripeness, the Howe's decision really is a decision on all fours. And in that case, the lower court had awarded monies to be paid to the debtor with certain provisions for an opportunity for relief to the appellant. And rather than taking those opportunities for relief, the appellant filed an appeal, and the BAP found on the issue of ripeness that the appeal was not right. We have the same thing here. We have a Chapter 13 plan that provides a very succinct outline, a roadmap, that should be followed that would allow for the adversary proceeding to move forward. Is that an appropriate use of the plan process? Yes. Why should a Chapter 13 plan with a plan injunction, you do agree that you have a plan injunction in place, do you not? Yes. Why should you be able to get that injunction and not be required to obtain an injunction in litigation meeting the appropriate test for enjoining action?  and you have not met the injunction standard, I think that's a manipulation of the system, and you wrote this plan. I proposed this plan, Your Honor, based upon the court's scheduling order that asked for a carve-out for the treatment of secured credit. So if we find that a carve-out isn't appropriate, that this treatment isn't appropriate, obviously you lose, right? Well, no, because we have a claim objection pending, Your Honor. You can proceed with your claim objection. Let me ask you a couple of questions, because I frankly don't understand some things in your plan. Your plan treats the amount of arrearage as 132, but right above that is a sentence that says the arrearage amount stated on a proof of claim controls over any contrary amount listed below. And this plan, their proof of claim says that the amount of the claim that has to be paid is a different amount, correct? That's correct. So why is it okay to pay 132 when the proof of claim is different, according to the terms of your own plan? Because that modification provision modified that provision of the plan with respect to the claim. And the plan, Your Honor, is a form plan that the district requires. Right. If I may, let me bring to the Court's attention the case of Jezinoski v. Countrywide, Supreme Court case that is cited in our brief on page 40. That's 57 U.S. 259 to 2015 case. Judge Scalia. Judge Scalia held that the notice requirement to rescind under truth of lending is a mere notice requirement, and we have done that. So why haven't you gone into your adversary proceeding then and gotten summary judgment or gotten an injunction? Because the Court has put all of the dates off pending this appeal. We've even propounded discovery, which appellate to say, oh, no, no, you can't do discovery because there's a stay, and there's no stay. Well, why didn't you do it before the plan was confirmed? Because I filed a claim objection, Your Honor, under federal rules. No, no, no, no, no, no, no, no, no, no. You're not answering my question. I need you to listen. You had a claim objection, and you had an adversary proceeding, correct? The claim objection was overruled on the grounds that we objected to the original claim number five. When they amended claim number six, it mooted the original claim objection to claim number five. Do you have an adversary proceeding pending? We do, Your Honor. Okay. That was a yes-no question. So you do have an adversary proceeding. In that adversary proceeding, you're saying this is easy, it's all done. Why did you not seek an injunction in the adversary proceeding? I have a stay. Okay. You have a stay under a plan that you're telling me isn't sufficiently final to appeal under, right? But we have a plan that is in place. Yes, Your Honor. No, let me see if I can do this right. The plan is such that... I think we think it's ripe. I mean, I'm just going to tell you right now, I don't think that's going to be your winning argument. There's lots more to talk about. There's a lot to talk about here, and certainly we've read your cases and certainly will consider them. If you wish to spend the rest of your eight minutes talking about ripeness, you may. No, Your Honor. I was answering Your Honor's questions, and I appreciate that. Let's go back to Jasanowski. So in Jasanowski, the Supreme Court held that mere notice of rescission effectuates rescission. It does not require litigation. Yet in the confirmation objection that was filed by an appellant, they cite the Ninth Circuit case of Yamamoto. Well, Yamamoto was overruled by Jasanowski. It does not require, as the Ninth Circuit had ruled in Yamamoto, that you have to tender for rescission. Did the judge make any findings as to the basis for her decision that would allow us to conclude that she actually reached the level of analysis that you're arguing? I don't recall that the court got into the details of her findings. Did she make any findings? I do believe that Judge Klein made the findings. She normally makes a confirmation that the requirements of 1325 have been met. Okay. Counsel, the way 1325 has been met, in your view, is that this is not an allowed claim. So whatever treatment you – but the reason it's not an allowed claim is because you have a claim objection outstanding. And under Jasanowski – But you don't have a determination. You don't have a determination by the court that the claim was rescinded, that the debt has been rescinded and it's zero. And, in fact, you haven't treated it as zero. You've just picked a number that you want to use. You've argued they can't argue that 1325A5 applies. So, in effect, you can get away with simply objecting and confirming, and down the road you go. Well, in a reading of Jasanowski by Judge Scalia – and Judge Scalia is a strict constructionist of what the code says – Judge Scalia said that Section 1365A of Truth in Lending merely requires notice of rescission, and that's what happened. Well, isn't the question here, though, whether – I mean, what they've said is we're not even covered by Truth in Lending Act because we don't make enough loans. Did the judge make a conclusion that was even applicable? I mean, I don't know one way or the other, but I don't see anything in the record that suggests that some fairly – facial defenses were even considered. And I hear what you're saying, but no judge has determined that. So, I mean, nothing could be less right than that, right? I mean, you may be dead right on the argument, and when a judge considers it, they may agree with you. But what can we do with that? Well, as a matter of law, filing of the claim objection and filing of the complaint under Jasinovsky, Judge Scalia would say rescission has been – Well, unfortunately, he didn't adjudicate your Chapter 13 plan, right? I agree. And no, wait, we're wasting time here. Until a judge agrees with you, it doesn't matter, right? It just doesn't matter. I mean, it's a great argument, and maybe you win someday, but you're not going to win that today. I don't know how you want us to consider that. Because I don't think Judge Scalia said under Jasinovsky that a court has to adjudicate these things. Well, he's not here to be interrogated either. Yeah, well, wasn't it – I mean, in that case, there was no question that truth in lending was applicable, correct? Ultimately, yes, but he stated that under the code, mere notice is what's required to rescind, not litigation. If it's applicable. I don't think he says that. Well, that's prevalent. I mean, you know, if the statute doesn't apply, notice of the statute isn't going to do anything, right? We can agree on that at least. Yes, it's subject ultimately to adjudication of whether or not it was applicable. Right. That's the tricky bit here, I think. It is, and that's why we filed the complaint, and we've been trying to adjudicate the complaint. Right, and I sympathize with you if the judge won't let you go forward because I think we wouldn't have even needed necessarily to have this appeal because those are straightforward issues that are subject to summary adjudication, in my view. I'm stuck. My client is stuck. On the issue of the claim objection, the Pacific Gas and Electric Company case at 295 BR 635, that was a Northern District of California case, 2003, Judge Montali, states that neither the Bankruptcy Code nor the bankruptcy rule was set forth a procedure for estimating claims. Instead, the court must use whatever method is suited to the particular contingencies at issue, and we provided in the plan for this estimation process. Well, you provided, in effect, your brief and a theory, but you didn't – where did she estimate? Where does this record suggest that – she made you take all that out of the plan, right? Well, she had to because if she included it in the plan, then the court would have been in error by adjudicating issues that had not been adjudicated before. So those provisions had to be removed from the plan. I don't understand what you just said. I'm going to be real honest. She had to remove something because she didn't adjudicate it, and that's really my question. Did she adjudicate it? The record doesn't support that she did. Well, we believe that when you look at how the plan was ultimately confirmed with the dollar amount and the interest rate provided under Truth in Lending, that the court did consider those provisions because the court adopted those amounts verbatim. But the court couldn't include that roadmap because had it included the roadmap, it would have been a premature adjudication of the issues and the claims. That clearly would have been a reversible error. Let me ask you another question since we're talking about case law. There is a Ninth Circuit case, Harbin, that talks about the requirement when you have litigation ongoing, this is in a Chapter 11 context, that it is reversible error to fail to consider what happens if the other side wins and to provide for that in your plan. Your plan says we'll try and do something. Why isn't that a problem for you? Well, but the plan provides for adjudicating the claims and then once that claim is adjudicated, coming back to the court with a modified plan. But there's no feasibility evidence showing that your client could do anything because you would agree that at the point you lose, if you lose, that the claim would be fully liquidated, would have to be paid in equal monthly installments, starting presumably one nanosecond after that happened. How would that ever be doable without their consent? Is there any evidence in the record to suggest that your client could provide such a planned treatment? The schedule of the amount, I don't believe that there is. The Chapter 13 was provided with all of the documentation required as requested and the Chapter 13 trustee supported confirmation. So the Chapter 13 trustee had with them the evidence they needed to support confirmation and they did. And I believe that the ongoing payments made by the debtor shows that they were able to make these planned payments. Well, those planned payments, sure, I agree with you. They can make the planned payments as proposed. The question is, could they make the payment if you're not successful in your objection? Well, that's what's provided in the plan, is that we have to go through modification provision and feasibility and prove it at that time. And is that appropriate in your view under controlling Ninth Circuit authority? Yes, I believe it is, Your Honor, in Chapter 13. Okay. All right. Thank you very much. Thank you very much, Your Honor. I appreciate it. All right. Mr. Haberbusch, you have 2 minutes and 23 seconds. Your Honor, I'm going to concede those minutes. Thank you very much. All right. Thank you. Thank you very much. All right. Thank you for your arguments. This will be taken under submission and we will endeavor to get a decision out quickly. Thank you very much, Your Honor. Thank you. Thank you. The next matter, please.
judges: Taylor, Lafferty, Gan